UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MAX MEHIGHLOVESKY,

        Petitioner,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, and U.S. IMMIGRATION AND
CUSTOMS ENFORSMENT [SIC],

        Respondents.

Civil No. 12-902 (RHK/JJG)

**REPORT AND RECOMMENDATION**

Max Mehighlovesky, Etowah County Detention Center, 827 Forrest Avenue, Gadsden, Alabama, 35901, Petitioner, pro se.

Ari Nazarov, U.S. Department of Justice, Office of Immigration Litigation, Ben Franklin Station, P.O. Box 878, Washington, D.C., 20044; and Erika R. Mozangue and Gregory G. Booker, Assistant United States Attorneys, Suite 600, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondents.

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2241. (Docket No. 1.) The matter has been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that this action be dismissed without prejudice.

**I.    BACKGROUND**

In June 1996, Petitioner traveled from Russia to the United States. He was admitted into the United States pursuant to a visitor's visa that was good for six months.

Petitioner did not leave the United States when his visa expired. In November 2011, federal immigration authorities apprehended Petitioner, and commenced a removal action against him.

On January 3, 2012, an Immigration Judge found that Petitioner had overstayed his visa, and ordered that he be removed from the United States to Russia. Petitioner filed a timely motion to reconsider the removal order, but the Immigration Judge denied that motion in a four-page written decision dated February 22, 2012.[1] Thereafter, Petitioner did not challenge his removal order by filing an appeal with the Bureau of Immigration Appeals, ("BIA"), or by pursuing any other administrative or judicial proceedings. Thus, Petitioner has been subject to a final removal order since February 22, 2012.

Petitioner commenced the present action on April 11, 2012, by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241. At that time, Petitioner was being detained by Customs and Immigration Enforcement, ("ICE"), at the Sherburne County Jail in Elk River, Minnesota. ICE later transferred Petitioner out of Minnesota, and he is currently being detained in a county jail in Alabama.[2] ICE apparently intends to detain

---

[1] The Immigration Judge's decision on the motion for reconsideration is included in the present record as part of a set of exhibits submitted by Respondents. (Exhibits, [Docket 8], "Attachment A.") That decision presents additional information about the factual and procedural background of this case.

[2] Although Petitioner is no longer incarcerated in the District of Minnesota, his current habeas corpus petition can still be properly adjudicated here, because he was confined in this District when the petition was filed. See McCoy v. United States Board of Parole, 537 F.2d 962, 966 (8th Cir. 1976) (the federal court for the district where a prisoner was incarcerated when he filed his habeas corpus petition does not lose jurisdiction when the prisoner is transferred to another district while his petition is still pending); see also Wright v. Lacy, 664 F.Supp. 1270, 1271, n.1 (D.Minn. 1987) ("[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change").

2

Petitioner until ICE is able to complete his removal to Russia.

Petitioner contends that ICE is detaining him in violation of the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001), because ICE will not be able to remove him to Russia within the reasonably foreseeable future. Respondents contend that this action should be dismissed, because Petitioner filed his petition prematurely. The Court agrees with Respondents.

## II. DISCUSSION

### A. The Zadvydas Decision

In Zadvydas, the Supreme Court held that aliens who are subject to removal orders cannot be detained by ICE indefinitely. According to Zadvydas, after a removal order becomes final, ICE has six months to actually carry out the removal order. After that six-month period has expired, the alien's continuing detention is no longer presumed to be reasonable and legal. After six months, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. If the alien meets his burden of showing that removal is unlikely to occur in the foreseeable future, and the Government does not present sufficient rebuttal evidence, the alien must be released from custody, subject to conditions and supervision prescribed by ICE. Id. at 699-700.

### B. Application of Zadvydas

#### (i) Ripeness of Zadvydas claim

In this case, Petitioner's removal order became final on February 22, 2012, when the Immigration Judge denied his motion for reconsideration. See Elcock v. Streiff,

3

554 F.Supp.2d 1279, 1283 (S.D.Ala. 2008) (removal order became "final" for Zadvydas purposes when the BIA denied alien's motion for reconsideration). Therefore, Zadvydas's presumptively reasonable six-month removal period had not yet expired when Petitioner commenced this action on April 11, 2012. Indeed, Petitioner commenced this action several months before any possible Zadvydas claim became ripe.[3]

Other federal courts have held that the six-month post-removal-order period sanctioned by Zadvydas "must have expired at the time [the alien's] § 2241 petition was filed in order to state a claim under Zadvydas." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002) (per curiam). "A petition filed before the expiration date of the presumptively reasonable six months of detention [prescribed by Zadvydas] is properly dismissed as premature." Keita v. Sabol, Civil No. 1:CV-11-248 (M.D.Pa. 2011), 2011 WL 1375052 at *2 (citing Akinwale, supra). "It is not enough that the [six-month] period of time expired by the time the petition is ruled on the by the court, the Zadvydas period must have expired before the petition is filed." Ba v. Gonzales, No. 4:07cv307-SPM/WCS (N.D.Fla. 2008), 2008 WL 2157073 at * 2 (citing Akinwale, supra) (emphasis added).

Respondents have filed a motion seeking to have this action dismissed because it was filed prematurely. (Docket No. 6.) Respondents are right. Petitioner had no

---

[3] Petitioner contends that his removal order became final on January 3, 2012, when the Immigration Judge initially decided that he should be removed to Russia. However, Petitioner has not offered any legal authority, or any logic, to support that contention. Moreover, even if the removal order did become final on January 3, 2012, (rather than February 22, 2012), the present action would still be premature, because it was commenced much earlier than six months after January 3, 2012.

4

colorable Zadvydas claim when he commenced this action, because he had not been detained for more than six months after his removal order became final. Akinwale, supra. Therefore, Respondents' motion to dismiss must be granted, regardless of whether Petitioner might have a colorable Zadvydas claim at this time. Id.

### (ii) Petitioner's Amended Habeas Corpus Petition

On November 27, 2012, Petitioner filed an amended habeas corpus petition. (Docket No. 19.) Petitioner's new petition does not present any new factual or legal grounds for relief; it merely reiterates the allegations and arguments advanced in Petitioner's prior submissions in this case. Although the amended petition was filed more than six months after Petitioner's removal order became final, it does not alter the Court's determination that Respondents' motion to dismiss should be granted. As discussed above, an action that presents a Zadvydas claim will be dismissed as premature, if the action was commenced less than six months after the apposite removal order became final. The cases cited above show that this rule is applied even if the action is not fully adjudicated until more than six months after the removal order became final. In short, the filing date of the original petition is controlling.

There is a good policy reason for dismissing premature Zadvydas actions, even when post-removal-order detention has exceeded six months by the time the case is decided. If the rule were otherwise, removable aliens would have no incentive to wait for their potential Zadvydas claims to ripen, and the federal courts might then be inundated with pre-emptive Zadvydas claims brought by aliens who are unwilling to give the Government six months to effect their removal. "A strict construction" of the six-month period prescribed by Zadvydas "serves a gatekeeping function to ensure that federal

courts are not unnecessarily weighed down with hasty complaints by impatient illegal aliens who seek premature release back into American communities." Fahim v. Ashcroft, 227 F.Supp.2d 1359, 1364 (N.D.Ga. 2002). In this case, Petitioner is one of those "impatient illegal aliens" referred to in Fahim. He did not give ICE six months to complete his removal before attempting to bring a Zadvydas claim into federal court. Petitioner should not be allowed to evade Zadvydas's six-month rule by filing an amended habeas petition after the six-month post-removal-order period has (apparently) expired. Because Petitioner commenced this action long before the expiration of the six-month post-removal-order period established by Zadvydas, the action must be dismissed as premature.

### (iii) No Showing of Non-removability

Even if this action were not premature, the Court still would recommend that it be dismissed, because Petitioner has not adequately shown that "there is no significant likelihood of [his] removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Zadvydas does *not* say that every alien not removed "must be released after six months." Instead, the Court ruled that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Then, after the six-month period, "the burden is on the alien to 'provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future....'" Barenboy v. Attorney General of U.S., 160 Fed.Appx. 258, 261, n. 2 (3rd Cir. 2005) (unpublished opinion), quoting Zadvydas, 533 U.S. at 701. Petitioner has not met that burden here.

In a submission entitled "Objections," (Docket No. 11), Petitioner has identified

6

several factors that supposedly are impeding his removal to Russia. He asserts that (i) the "Russian Consul finally denied request for issue travel document," [sic], (ii) removal would be "extremely dangerous for his life, based on his religion, current politic, criminal situation in Russia;" and (iii) "transportation to Russia unavailable" because he "can't currently travel in aircraft after ex adventure about 3 years ego [sic], and could never travel on vessel." (Id., p. 5.) Petitioner's amended habeas corpus petition, (Docket No. 19), presents an expanded list of alleged impediments to his removal:

"1) Petitioner's removal order issued longer than 6 month ago.
2) Russian Consul denied request to issue travel document.
3) Petitioner doesn't have citizenship in any country.
4) Petitioner's parents confirm he is born in U.S.
5) Petitioner doesn't have criminal history.
6) Petitioner never used any society.
7) Petitioner's detention very threat for economy.
8) Petitioner have claustrophobia and depression.
9) Petitioner needs support for disabled mother seriously injured in car accident."

(Amended Petition, [Docket No. 19], pp. 4-5.)

After carefully reviewing all of Petitioner's submissions, the Court finds that he has not met his initial burden of showing that there is no significant likelihood that he will be removed in the reasonably foreseeable future. Many of the matters cited by Petitioner have no bearing on the feasability of his removal. In particular, Petitioner's alleged lack of "criminal history," his alleged "claustrophobia and depression," his alleged need to provide "support for disabled mother," do not have any conceivable bearing on ICE's ability to effectuate his removal.

Some of the matters that Petitioner has cited actually could adversely affect his

7

prospects for an expeditious removal – if they were substantiated. Petitioner's removal could be delayed if the Russian Consul has been refusing to issue necessary travel documents, or if Petitioner truly "doesn't have citizenship in any country." Likewise, if there really were no viable means of physically transporting Petitioner to Russia, that might also cause his removal to be postponed indefinitely. However, Petitioner has not adequately substantiated any of these alleged impediments. He has not offered any evidence of any kind – not even a self-serving declaration – to support his conclusory allegations regarding the supposed impediments to his removal.

"The alien bears the initial burden of proof in showing that no [significant] likelihood of removal exists." Andrade v. Gonzales, 459 F.3d 538, 543 (5th Cir. 2006), cert. denied, 549 U.S. 1132 (2007). An alien fails to satisfy that burden when he "has offered nothing beyond his conclusory statements suggesting that he will not be immediately removed." Id. at 543-44. In this case, Petitioner has not met his burden of showing that his ICE detention is likely to be indefinite. He has presented only vague, unsubstantiated, self-serving arguments. "[I]n order to state a claim under Zadvydas, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale, 287 F.3d at 1052. Petitioner has not done that here. Therefore, even if this action were not premature, Petitioner's Zadvydas claim still could not be sustained.

C. Other Extraneous Claims

Petitioner's various submissions in this case present numerous allegations and arguments that have no direct relevance to his Zadvydas claim. These matters will be

briefly discussed, so that Petitioner will know they have not been overlooked. However, Petitioner cannot be granted any relief in connection with any of these extraneous matters.

First, Petitioner has raised several issues pertaining to his removal proceedings before the Immigration Judge. It is indisputable, however, that Petitioner cannot challenge the propriety of his removal proceedings, or the legality of his removal order, in a habeas corpus action in a federal district court. Since the enactment of the REAL ID Act in 2005, "district courts no longer have habeas jurisdiction to review final orders of [removal]." Tostado v. Carlson, 481 F.3d 1012, 1014 (8th Cir. 2007). "Pursuant to § 106 of the REAL ID Act, [8 U.S.C. § 1252(a)(5)], a petition for review to the courts of appeal is the exclusive means of review of an administrative order of removal, deportation, or exclusion." Id. (emphasis added). The exclusive remedy rule of the REAL ID Act bars Petitioner from challenging his removal order in the present habeas corpus case.[4]

Petitioner's submissions also include several references to Casas-Castrillon v. Department of Homeland Security, 535 F.3d 942 (9th Cir. 2008). (See "Objections," [Docket No. 11], p. 4; "Objections," [Docket No. 15], p. 3.) In that case, the Ninth Circuit Court of Appeals held that the Attorney General must provide a hearing to an alien who seeks to be released on bond while the alien's removability is still under review. See Kingoo v. Clark, No. C09-649-TSZ-JPD, (W.D.Wash. 2009), 2009 WL 3103982 at *3 (in

---

[4] Several months ago, Petitioner filed another habeas corpus action in which he explicitly challenged the legality of his removal proceedings, and the enforceability of his removal order. This Court recommended that the case should be transferred to the Eighth Circuit Court of Appeals, in accordance with Tostado. However, the Respondent argued, and Petitioner agreed, that the case should be dismissed. Based on the mutual request of the parties, the case was dismissed. See Mehighlovesky v. Immigration Court, Civil No. 12-768 (RHK/JJG).

9

Casas-Castrillon, "[t]he Ninth Circuit concluded that aliens who are detained pending judicial review of an administratively final removal order that has been stayed are entitled to an individualized bond hearing before an Immigration Judge and an opportunity to appeal that determination to the BIA"). The hearing and bond requirements discussed in Casas-Castrillon are not applicable here, because Petitioner's removal order is already final and not subject to any further review.

Petitioner has also repeatedly mentioned that he was apprehended by ICE officials during an unexpected early morning visit to his home. Petitioner refers to an "illegal arrest from home with no warrant and no legal reasons for that actions." (Objections, [Docket No. 15], p. 1.) More detailed allegations pertaining to Petitioner's apprehension are presented in a document entitled "Illegal Enforcement Arrest, Illegally Detaining, Serious Violations In Process." (Docket No. 10.) (See also Amended Petition, [Docket No. 19], pp. 3-4, ¶ 14.) If Petitioner believes that government agents violated his rights under federal law or the Constitution when they apprehended him, then he might be able to seek redress from those individuals in a federal civil rights action.[5] However, the only issue that can properly be considered in the present habeas corpus action is whether Petitioner's continuing detention is proscribed by Zadvydas. See Taylor v. Roal, Civil No. 10-3588 (PJS/JJG) (D.Minn. 2010), 2010 WL 4628634 at *5 (when a federal detainee's "claims do not challenge the fact or duration of his confinement, they may not be brought in a habeas petition"). The circumstances surrounding Petitioner's

---

[5] Petitioner should not misconstrue this observation as an encouragement to commence a civil rights action. Based on the information Petitioner has presented in this case, the Court finds no reason to believe that he could sustain a civil rights claim based on his apprehension by ICE.

apprehension by ICE have no bearing on the legality of his current post-removal-order detention.

Petitioner's submissions also include several allusions to the conditions of his confinement during the time that he has been detained by ICE. In one submission, it is averred that –

> "Plaintiff claustrophobic and depressioner, [sic] and very suffering in jail, doctors refused give him diagnose and provide herbal medicine. Plaintiff is Orthodox Baptist, his religion prohibit use artificial medicine or food. He lost his physical condition and had serious allergy and die risk, his request for special diet was denied, even for his expense, has serious stresses from obstruction immigration."

("Illegal Enforcement Arrest, Illegally Detaining, Serious Violations In Process," [Docket No. 10], p. 6.) Elsewhere it is alleged that–

> "Sherburne County med supervisor refused to Mehighlovesky for herbal medicine and special diet, base on Mehighlovesky religion and life style. ICE refused to Mehighlovesky transfer him to federal prison, thus Mehighlovesky claustrophobic and got depression after DHS obstructions."

("Objections," [Docket No. 15], p. 4.) On November 27, 2012, the Court received a letter from Petitioner, (Docket No. 20), which included additional allegations of mistreatment.

However, all of Petitioner's allegations of mistreatment, like the allegations regarding his apprehension, have no direct bearing on the legality of his continuing confinement per se. Again, if sheriff's deputies, or other government agents, have somehow mistreated Petitioner during his confinement, in a manner that has violated his rights under federal law or the Constitution, he might be able to seek redress in a civil rights action. But any such claims would pertain only to the conditions of his confinement, not the fact or duration of his confinement. Therefore, any such claims cannot be adjudicated in the present habeas corpus action. Taylor, supra; see also

Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) ("[i]f the prisoner is not challenging the validity of his conviction or the length of his detention,... then a writ of habeas corpus is not the proper remedy").

### III. CONCLUSION

The Court concludes that this action should be dismissed because it was commenced prematurely – i.e., before the expiration of the six-month post-removal-order detention period sanctioned by Zadvydas. Furthermore, Petitioner has failed to establish a sustainable Zadvydas claim in any event, because he has not adequately demonstrated that his detention is likely to be indefinite. More specifically, he has not shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. The Court will therefore recommend that Respondents' motion to dismiss this action be granted.

However, the Court will recommend that this action be dismissed without prejudice, so that Petitioner will be able to bring a new Zadvydas claim in the future, if he is ever able to substantiate such a claim. The Supreme Court has pointed out that "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701. This means that the longer Petitioner remains in custody, the more compelling his Zadvydas claim will become. If Respondents continue to detain Petitioner without making progress in the removal process, and if Petitioner is able to show that there are insurmountable obstacles to removal, then he might be able to present a sustainable Zadvydas claim sometime in the future.[6]

---

[6] If Respondents intend to remove Petitioner before his putative Zadvydas

The dismissal of this action should not prevent Petitioner from hereafter commencing a new habeas corpus action that presents a renewed Zadvydas claim. See Hydara v. Gonzales, Civil No. 07-941 (PJS/JSM), (D.Minn. 2007), 2007 WL 2409664 at *5 (although petitioner's current Zadvydas claim is not sustainable, he might be able to bring a valid claim in the future), aff'd 324 Fed.Appx. 534 (8th Cir. 2009) (unpublished opinion). See also Jaiteh v. Gonzales, Civil No. 07-1727 (PJS/JJG), (D.Minn. 2008), 2008 WL 2097592, at *3 (recommending dismissal without prejudice, so petitioner could commence a new action asserting a new Zadvydas claim based "on newly developed facts"); Gahamanyi v. Baniecke, Civil No. 07-4007 (D.Minn. 2008), 2008 WL 5071098, at *12 (same). However, if Petitioner does commence a new habeas corpus action in the future, he will have to file his petition in the district where he is then confined. See Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004) ("for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement").

Lastly, the Court notes that the Clerk's Office has treated one of Petitioner's many submissions as a "motion" seeking release from jail. (Docket No. 16.) Having determined that this action must be dismissed, the Court will recommend that this so-called "motion" be summarily denied.

## II. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

---

claim has ripened to sustainability, it might behoove them to redouble their efforts to carry out the removal order. If Respondents are not presently able to send Petitioner to Russia, they might have to release him (conditionally) until they are prepared to do so.

**IT IS HEREBY RECOMMENDED** that:

1. Respondent's Motion to Dismiss, (Docket No. 6), be GRANTED;

2. Petitioner's motion for release from jail, (Docket No. 16), be DENIED; and

3. This action be DISMISSED WITHOUT PREJUDICE.

DATED: December 7, 2012         s/ *Jeanne J. Graham*
                                JEANNE J. GRAHAM
                                United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **December 24, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.